v. Engineered Plastics, Inc. Mr. Sommer. Thank you, Your Honor. Good morning. May it please the Court. I'm Ashley Sommer and I'm here from Nelson Mullins today on behalf of Appellant ADA Solutions. And the issue before the Court today is simply whether the Board's obviousness rationale stated supports its obviousness conclusion. We respectfully submit that those rationales do not support the obviousness. Let me clarify a couple of housekeeping matters. Just to confirm, you're waiving all your arguments with respect to jurisdiction of the Patent Office to conduct an IPR? That's correct, Your Honor. The proposal came out well after our interview, so I mean I think the Court obviously has to satisfy. You're of course right. I just wanted to make sure. I do. If the Court saw otherwise, I think you can satisfy yourself in jurisdiction, but we don't have argument to the contrary. Okay. EPI claims on page 58 of its red brief that you've waived your argument that the PTAB erred in failing to determine the appropriate level of skill in the art. Did you raise that argument? Thank you, Your Honor. So throughout the examination and on appeal to the Board, ADA constantly argued the heart of the obviousness rejection of what a person of skill in the art would do. And so they this teaching would be considered or how the references would be combined. And I think implicit in that is what the level of skill in the art is. The skill in the art is the prism through which the whole obvious analysis is undertaken. So implicit in what a person of skill in the art would do is who that person of skill in the art is. Was there really a debate over what the level of skill was? There was never a, it was never teed up I suppose, but in response to that I would say that it is the Patent Office's burden in a re-examination to establish a prima facie case of obviousness. And here they didn't come forward and meet their burden to establish that, so ADA's response burden was never triggered to come forward with evidence to counter when the skill in the art had not been established by the Patent Office in the first instance. In an IPR, you say the Patent Office has a burden of proof to establish obviousness? Yes, Your Honor. No, I'm referring to the older inter-parties re-examination. So it's more akin to prosecution than the current inter-parties review. With respect to the level of skill in the art, does it, even though it's probably better practice to explicitly state it, whether you're a district court or the PTO, does it have to be explicitly stated if it is sort of understood from the record and the parties have never debated it? So that's a good question. We're not arguing that in every case or every re-exam or district court litigation that the fact finder has to expressly state the level of skill in the art. And this court has never held that, that it has to be done in every case. However, this court has said when it influences the analysis and can make a difference, it can be error to fail to state, to resolve the level of skill in the art. And here, unlike some cases, whether there's a high level of skill or a low level of skill, the obviousness analysis may not be impacted. Here, I would respectfully submit that it is impacted because the board and the examiner made leaps based on what a person of skill in the art would do, how he would combine references, which teachings of this reference he would select, which ones he would ignore. And so here, where it does impact the analysis, I think the court's previous decisions indicate that it can be a reversible error to fail to do that in cases where it matters. The record group relies on the absence of specific findings on the level of skill in the art does not give rise to reversible error where the prior art itself reflects an appropriate level and a need for testimony is not shown. And in the gray brief, you quote, okay, but you don't respond. You just say, I mean, your quote is, as this court has observed, skill in the art doesn't bridge over, but that doesn't refute the sure, your honor. And I would respond that if you're only relying on the teachings in the prior art to show, um, what the level of skill in the art is here, the, that's going to be a low, uh, level of skill that was implicitly found. Even the board didn't expressly find it because the prior wasn't making these combinations. It wasn't putting together all of these pieces like our inventors did in our patent. So to the extent that may hold true, that there is some suggests a low level of skill that does not support the creative and, uh, extensive movements by the board amongst the different. Let's move on to the, to the merits. Yeah. Because this is another issue here. We have the office, we have the presumption that the decision makers are skilled and a lot of other complexities that don't arise in the district court. So let's proceed with the rest of your argument, if that's okay. Yeah, I had a, I was gonna segue right there. So, so speaking of the, of the, of this, uh, the prior art, uh, you argued that the anchoring screws, uh, uh, disclosed in Zichelli, I think it is, are not fasteners. Uh, in five pages of your blueprint. But Zichelli, uh, describes the purpose of anchoring screws, quote, to mechanically fasten, close quote. How is that not a fastener? Sure. So, so our argument there to be clear is Zichelli discloses two distinct types of tiles. They disclose a tile that's known in the art. You, that's called a surface tile. It's, it's more like a mat. You put it on a hardened concrete surface. You go out, put one on the sidewalk now with adhesive and these anchoring screws. That's what holds it down. It's not installed into wet concrete. That's the first embodiment. It very distinctly discloses a second embodiment that is installed into wet concrete. And we're not claiming to have prevented installing tiles into wet concrete. Our claims are more limited to a specific method of doing that. But the second embodiment of Zichelli, which is disclosed and recognized by Zichelli as being installed into wet concrete, does not use fasteners. It, it locks in by the holes in the tile, uh, is, is what locks that into the concrete. But there's no disclosure of using fasteners in that, what we call the wet set, the installation to wet concrete embodiment. So what the board did is it mixed those two together. It said, well, you have a wet set installation here and you could grab the anchors from over here on the surface tile and put them together. And I, while in some cases it may be fine to mix embodiments of patent disclosures, prior art, this case is not one of those. This isn't where there were two different types of wet set tiles in Zichelli and you're saying this one had fasteners, this one didn't. You can intermingle those amongst the different wet set embodiments. Here, Zichelli didn't appreciate that fasteners could be used in the wet set embodiment. And so the prior art, artisans themselves didn't recognize this crossover. So it's, the board had no basis to, to intermingle there. As I understand it, you concede that traffic signs, I guess that's how you pronounce that, disposes everything except the installation in the wet cement. So I want to be clear, we don't concede that and we're not challenging it on appeal. And the reason I say that is below and other rejections that were not pursued, we argued that traffic signs does not disclose a tile where the flange on the side is thicker than the rest of the body and that was a disputed point. And so I don't want to concede that it does disclose that, but we are not challenging it on appeal. Because our client has other patent applications pending, so I don't want to, but we're not challenging it. If the only piece that's missing is installation in wet cement, don't you have the board pointing to other places where that's actually shown? They do, Your Honor, but I would suggest that the claims are not limited to just putting traffic signs in wet cement. The claims require a tack coupling the anchors to the lower tile of the surface prior to installation so that you're, it's a pre-assembled unit you're putting all in. And the board concluded and the examiner concluded that traffic signs discloses no installation method at all. And so I suggest it's not enough to go say just stick this tile in wet concrete because that's not the claim. It's how you do it. You have to couple the anchors first, put the entire unit in in that manner. And Boghossian, the secondary reference for that rejection, doesn't disclose that. It leaves the anchors loose and it has a teaching to do that so that the air escapes through the loosened hole in the top. And so you can't just ignore that teaching. When traffic signs has no teachings of how to install it, you can't just ignore the go install it in wet concrete. A person of skill in the art would at least consider and you need some basis to reject how they did that to match up to the claims. What about Waymire? So, so and this rejection of traffic signs based on Waymire, I want to be clear, is only for claims one and two. Right. The examiner clearly expressly didn't adopt it for claims 19 and 20. So that's an applicable way. For traffic signs in Waymire, again, Waymire teaches trapping air underneath the tile. Traffic signs is a road sign. It's not a tactile order. They teach both, don't they? Don't they teach trapping air, but then they also talk about not trapping too much air and actually teach how to avoid trapping too much air? They do talk about trapping air and they talk about not trapping too much air, but they never talk about eliminating all air. Under every embodiment in traffic signs, I'm sorry, Waymire, they want to trap air. And that's the whole thrust of that. You want to trap air. What they're doing in that is you want to trap air, but not too much. And because you're trapping air, you don't want the tile to break or have structural stress. So you're going to add this honeycomb thing underneath to reinforce it. So you're saying in the alternative embodiments of Waymire, where they're actually talking about avoiding trapping air, you're saying that they're actually affirmatively saying you also want to trap air in that embodiment? I don't think in those alternative embodiments they're saying you avoid trapping air. I think they're saying you avoid trapping too much air, but they're not talking about eliminating all air. They're talking about trapping just enough so you still get that sound resonating quality of if a blind person hits the tile with their claim cane or something. They want some air under there, but you don't want too big of an air pocket because the stress of it could break and things like that. So they do talk about minimizing air, but they don't talk about eliminating air. And our claims specifically require essentially all of the air escaping through the slot in the flange. And so again, that's the only, that rejection only applies to claims one and two. If I could jump quickly, the only rejection in the record for claims 19 and 20, which are also method and installation claims, are the combination of Zucchelli with traffic signs and Waymire. And we've already talked about how our argument is that that's a wet set embodiment that would be switched out. The other argument that, or the other error that pervades the board's analysis on claims 19 and 20 is the conclusion that Zucchelli discloses slots in the flange. Zucchelli does not disclose slots in the flange, and the claims do not encompass holes in the flange. The claims specifically require slots. The patent talks about holes and don't they essentially say that the two function the same way? I mean, I'm looking at the language of the patent itself. So weep holes pass through flange or edge very close to where the edge meets body to allow air to escape from beneath unit as it is installed in a similar fashion as the slots in the first embodiment described above. So I give two responses to that. First, Your  prior art reference on traffic signs on Zucchelli and not Waymire talk about slots and holes being interchangeable. The only reference on appeal that has slots is traffic signs. And Zucchelli, so our inventors recognize that weep holes can be interchanged with the slots in metal embodiments, but those are small weep holes that just let air out. In Zucchelli, there are larger holes in the flange that are intended and expressly stated to lock when the concrete flows in there. It locks the tile in as opposed to our application or patent where the weep holes are just small and allow air out but are small enough so that it doesn't lock the tile in. I didn't want to interrupt your flow, but you said for the wet set embodiment that would be switched out? Well, the wet set embodiment, the purpose of our invention is to be able to install the tile with the anchors and then I'm not sure what... I couldn't hear the word switched or squished. I may have said switched out, meaning replacing the tile, taking it off without disturbing the underlying concrete as in the dependent claims, so switching it out, replacing it. Let's hear from the other side. Good morning, your honors. Philip Swain for Engineering Plastics. Here, let me ask you a housekeeping question, Mr. Swain. In the red brief at 17, you raise an argument for indefiniteness of Claims 1 and 19. It's not briefed by ADA or discussed in the PTAP decision. Is this the first time you're raising this? No, we did raise it. Where is it in the record? It's in the the... it's in several places in our briefing before the examiner. I think the most recent time we raised it before the examiner was in the time just before the action closing prosecution and the examiner addressed it both in his right of appeal notice and his action closing prosecution. We did also raise it in our prophylactic appeal, but that appeal was rejected on technical grounds by the by the board. Right, and we can't base a rejection on a ground that the board did not address, correct? I think you can, your honor, because it's a issue of law, but you could also remand, if you choose not to affirm based on the obviousness rejections that are before you now, and you choose to address one of these obvious rejections, you could also remand for consideration of this legal issue, but it is a legal issue that you can address. It is in the record, both in the examiner's decision of action closing prosecution and the right of appeal notice. Okay, there are several places in the record where the examiner addressed our contentions on indefiniteness. Your honor, can you start where he left off and tell me if you see a distinction between weep holes and holes? Yes, there is the patent. Yes, you see a distinction. There is the patent claim. I thought that's what you meant. Yeah, patent claim term slots is a broad term that includes holes and slots. The patent claim term, it describes in the specification slots that extend, may or may not extend, all the way to the bottom of the flange. So in other words, slots includes holes, and the reference to the place in the specification where it refers to slots that extend all the way to the bottom of the flange, I believe, is it's figure, it's a column six, and let me see exactly where that is. In any case, it's part of the specification. Slots may extend to the bottom of the flange, and therefore, slots would include holes, and that is also consistent with... Well, the PTAB didn't go there anyway. The PTAB did. PTAB didn't go there. The examiner did. PTAB chose to... They based on the examiner's alternative finding. That's right, and another basis for the claim interpretation that slots would include holes would be if you look at the parent patent, the 581 patent, which is no longer enforced because the PTAB in a separate re-examination canceled all claims, and they chose not to appeal that. There are dependent claims in the 581 patent that include the limitations, slots which extend to the bottom of the flange, so if you look at claim differentiation, that would mean that there are slots that do extend all the way to the flange, or do not extend all the way to the flange, so they are choosing to use a very broad claim term, and I think if there were infringing products that include just holes, as in the Sakeli, as Sakeli patent, they would try to, would have tried to claim that those infringe. So in any case, the Sakeli patent, while we're talking about the Sakeli patent, the board disagreed with their contention that there are two distinct embodiments of a flange that has holes and one that doesn't have holes. The Sakeli patent, in fact, discloses one tile that has holes in it, and you can, the board relied on the idea that the Sakeli patent had holes in the wet set embodiment, and that it also had fasteners. They used figure two, which shows holes and fasteners. To get back to your question about where the indefiniteness argument, you can look at the appendix, page 1039. That's the right of appeal notice where the examiner addressed the EPI indefiniteness question. Thank you. Okay, Your Honor, I'd just like to begin by putting this whole proceeding in perspective. ADA's patent describes and claims a tactile warning tile, but we a patent from 1935. This is the traffic science patent. That patent was brought to the attention of the Patent Office in our re-examination requests, and ADA had to drop all claims to the device. In this proceeding, in the 491 patent, and the parent patent, and so now you have remaining claims to the method of And the issue before the board was just whether it was obvious to install an 80-year-old device in wet concrete, a mechanical device. And the issue before this court is whether there's substantial evidence to support the board's conclusions that that method of installing that old device in fresh concrete would have been obvious. There are four obvious misrejections that the board relied on. It chose to address only four out of 17 obvious misrejections that were in the examiner's right of appeal notice. Those obvious misrejections are simple and straightforward, and as I said, there's substantial evidence to support them. On that point about the simple and straightforward, do you agree that in order to get to the obvious misconclusion on the motivation to No. This is a low level of skill in the art. First of all, all of the references are within the same area of art, so there's not a situation where we have to combine references from disparate areas of technology. This is the same level of area of technology. Second, this is not a situation where the level of skill in the art makes any difference. These are mechanical devices from the construction area, very simple to understand. Third, ADA has never challenged the level of skill in the art, didn't ask the board to make any findings about the level of skill in the art. So this was not an issue that they raised before the board, so the board can make any findings. And finally, this is not an area where it makes any difference. Well, I think that's the key question because obviously the level of skill in the art is an element of the obviousness finding, so you have to know what your threshold, what your beginning point is. So the question is, does it really make a difference? In this case, it doesn't. And there are cases, both parties cited cases in their briefs, although as I said, this was never raised before the board. So it was raised on appeal by ADA for the first time. I think this is a good case for holding that it was waived because the board never had a chance to address it, the examiner never had a chance to address it. It was raised in one place in the record by us in one of our expert, in our expert declaration, but never raised by ADA. But it doesn't make any difference, and there are cases by this court where it says when it doesn't make a difference because the level of skill in the art is so simple, it doesn't become an issue on appeal. And in this case, those cases... Fortunately, I used to be a construction laborer. Excuse me? I said, fortunately, I used to be a construction laborer. So you might understand what we're talking about here. We're talking about installing mechanical devices in wet cement. And finally, you know, the cases where it does make a difference, where this court holds that it makes a difference, is typically where the trier of fact or the decision maker failed to follow the gram factors or failed to make findings. In this case, we clearly have definitely has explained its reasoning on, you know, what the motivation to combine, what the obviousness decision would have been here. So this isn't a situation where the failure to find the level of skill in the art would have made any difference. How was it you raised, you said you raised level of skill in the art at one point below? I said that's the only evidence. We had a declaration from an expert, and he mentioned what he thought the level of skill, it could have been addressed. He said it would be a person with a bachelor's degree in mechanical engineering or four years of experience in designing these sort of things. But it was, that was the only evidence in the record. I think that that declaration is in the record in the joint appendix, but I was a professor of Frye from MIT, but he was never made an issue at in the examination at any point. Nobody contended that it made any difference whatsoever. So if what would have been an issue, that would have been something the board or the examiner could have addressed. So just to conclude my points, the four obviousness rejections before the board, or the board addressed and now before this court, are straightforward and the board has explained them with reasoning and substantial evidence. Just to address what they have said, the combinations based on traffic signs have demonstrated that traffic signs has every limitation of the ADA device. We have a chart on page 10 that illustrates that in our brief. The board then and the examiner looked at Wehmeyer and Boghossian for the idea of installing this device in fresh concrete. They provided a motivation to combine and they explained with substantial evidence. What's your response to the friend on the other side who says Wehmeyer actually teaches away from the circumstances in which you have no air trapped underneath. And as you pointed out, the Wehmeyer also has a disclosure that teaches of minimizing of air and the board has a good explanation. They cite a case, I think, the EWP versus Reliance case in their opinion that explains you have technical teachings, you don't have to import the entire invention that to when you're combining references, you can take the teachings from the prior art and you look at it as a whole and what they're doing is they're taking the technical teaching of Wehmeyer which is the idea of installing this in fresh concrete and combining that with the rest of traffic signs. And what ADA is trying to do, which the board disagreed with, is trying to take parts of Wehmeyer like the part about trapping the air and and importing that into this combination. And the board explained why it disagreed with that. The board gave reasoned analysis why that was a wrong combination. One of the arguments you make is that the 491 doesn't require any particular installation order and I have a little bit of problem with that because as I read the specification, it seems to say that the whole assembled unit is then placed into the top of the fresh concrete. So doesn't that imply that the fasteners have to be attached at the time, or the anchors have to be attached at the time of installation? Well the claim, the argument we make is that claim one doesn't require a specific order and that was the board and the examiner both agreed with that argument and I think this court has precedent that explains when you decide whether the steps of a claim method have to be construed to require the order that they're written. And you look, first you look and see whether the claim itself has a logic and grammar that dictates the order and in this case the board did that and the examiner did that and said we don't find that this dictates an order. And then if you look at the specification, you may read the specification as requiring an order but in this case the board I think correctly held that the specification didn't actually say that an order is required and in this case there was no disclaimer of any specific order in the specification. If you look at the prosecution history, ADA has argued that the specification history, they amended the claim to require an order but they actually didn't amend the claim to require an order, they amended the claim to get around a reference but that wasn't to require an order. So what does it mean to say the whole inventive unit is placed into the concrete? They amended the claim to do what, I'm sorry? The specification talks about taking the entire assembled inventive unit and placing it into the concrete. So there isn't Claim 19, that limitation. So I would agree that Claim 19 does require an order but Claim 1 is the one that does not have that limitation placing the assembled unit into the concrete. And there is also a claim in the cancelled Claim 581 patent that has more of an implied order to it. But Claim 1, I think you can look at that and there's no reference to an assembled unit that is placed in the concrete. Now I'm out of time but I would like to conclude by basically explaining that these four obviousness rejections that are before the court are straightforward. They were explained with reasoned analysis and substantial evidence. We therefore request the court affirm the rejections of Claims 1, 2, 19, and 22. If the court has no further questions. Thank you. Thank you Mr. Swain. Mr. Sumner, Mr. Walker would you restore the full rebuttal time? Thank you Your Honor. I'd like to start with perhaps where we were going in the rebuttal argument and that's with Zichelli clearly does not disclose slots. Discloses holes and the claims are limited on their face to slots and that there's no way to get there. There's no reason way to get there. The only other reference that discloses slots is traffic signs. Traffic signs is a road sign. It's not a tactile warning system and the reason that's relevant on appeal that you would have slots and traffic signs is to use bars or rods to help align the tiles when you install them. But traffic signs as the board recognized doesn't tell you how you install those those traffic signs road signs. And so there's nothing to link together that anyone in the tactile warning industry installing tiles and concrete was using these tiles and rods disclosed back in the 1920s for road signs. Zichelli doesn't use rods or bars, Waymire doesn't use them, and Boghossian doesn't use them. So to jump from this road sign that use slots for this other purpose to using it in a tactile warning system with slots, there's no linkage there in the analysis. There's no evidence to get you there. So and I would respectfully submit that the fact that our patent recognizes that you could use slots in some embodiments and weep holes in some embodiments, just because our inventors recognize that doesn't mean it was recognized by those of skill in the art in the prior art. It would be improper to hold our invention disclosure against us to make that combination. In terms of the level of skill in the art, Mr. Swain correctly indicated they put on evidence that the level of skill in the art could be as That's not, you know, some 25-year veteran, that's not some PhD scientist that you may have in other pharmaceutical cases. To make the jumps and the leaps in this case, to fill that gap in the motivation to do that with that skill, we would submit was improper. It's a lower level of skill and there was no level of skill found like we talked about in our opening. And finally, not requested but again it is the patent officer's burden to establish the prima facie case and so we would submit that we didn't have a burden to come forward with evidence. Did you indicate that you agreed with the other side's expert? No, Your Honor, and actually the way that it's a little backwards in the re-exam context because after a rejection we respond first and then the request and response second, so they're actually the respondent after that. I gather it wasn't in dispute. Are you on this appeal distinguishing between claim one and for In terms of the rejections, yes, Your Honor, because the only rejection of claim 19 is the rejection based on Zucchelli, which has no slots. And so in terms of which rejections are applicable, it is a distinction because the traffic signs rejection is not asserted against claim 19 by the board. And that's largely because they rejected that rejection because it requires a composite resin that the board found is not, would not be modified for the traffic signs reference. That was metal. And so the last point I would just address quickly is the indefiniteness argument. The EPI did raise the argument below to the examiner. The examiner did not accept it. He said a person of skill would be able to it was not properly cross appealed and so it wasn't raised to the board so the board didn't consider it. And so I suggest it's not before this court for that reason and also so it's not properly before the court but if the court does consider it I would suggest the indefiniteness issue on that term has underlying factual issues so it's not just a legal matter that should be considered in the first instance here. And so I see I'm out of time so we would respectfully request that you reverse the the pending rejections on the grounds stated today and in our brief.